IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

HOMELAND TRAINING CENTER, LLC,
A Tennessee Limited Liability Company,

        Plaintiff,

v.                        CIVIL ACTION NO:    3:07-cv-160

SUMMIT POINT AUTOMOTIVE RESEARCH
CENTER, a West Virginia Limited Liability
Company, individually and in its capacity as
Trustee of the William Scott Inter Vivos Trust,
and the WILLIAM SCOTT INTER VIVOS
TRUST,

        Defendants/Third-Party Plaintiffs,

v.

HOMELAND SECURITY CORPORATION,

        Third-Party Defendant.

**PLAINTIFF HOMELAND TRAINING CENTER, LLC'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO PERMIT IT TO
DISCLOSE AND DESIGNATE REBUTTAL EXPERT TESTIMONY**

The Plaintiff, Homeland Training Center, LLC ("HTC") submits this Memorandum of Law in support of its Motion pursuant to Paragraph 4 of this Court Scheduling Order to allow it a reasonable period of time to disclose and designate rebuttal expert testimony in this matter. As discussed more fully below, fundamental fairness requires that HTC be given the opportunity to disclose and designate rebuttal expert testimony in response to SPARC/Trust's experts in this case. On September 15, 2010, SPARC/Trust disclosed reports and information for twelve (12) expert witnesses in this case covering a variety of topics including accounting, government

contracts, hotel operations and finance. HTC's initial expert disclosures were limited to experts who valued HTC's business based on a discounted cash flow analysis, those who performed the due diligence that formed the basis for the discounted cash flow analysis and an expert from who it sought financing. With only fifteen (15) days left in discovery, SPARC/Trust disclosed experts with opinions counter to each of HTC's opinions, challenging both the substance and methodology of HTC's experts. As of this date, only two (2) of SPARC/Trust's twelve (12) experts have been deposed. More importantly, SPARC/Trust has continued to offer additional expert testimony in an attempt to rebut HTC's experts, submitting a supplemental report from its expert John Pekar on Wednesday, September 30 at 3:24 p.m., the day before Mr. Pekar was to be deposed by HTC. Because HTC should be given the same opportunity to develop expert testimony in rebuttal to SPARC/Trust's experts that SPARC/Trust was given, good cause exists for allowing HTC an additional, reasonable period of time to disclose and designate experts.

I.  SUMMARY OF RELEVANT FACTS

1. Under the terms of this Court's Original Scheduling Order entered on February 22, 2010, SPARC/Trust had until July 1, 2010 to provide its expert disclosures and reports. *See* Scheduling Order.

2. Counsel for SPARC/Trust requested to depose several HTC fact and expert witnesses in a very specific order and with a large amount of time in-between depositions so that his experts could review material and so that he could properly prepare for the depositions. In fact, at one point during discussions with counsel regarding deposition dates for HTC's witnesses, SPARC/Trust's counsel stated that deposing two individuals in one week with only one day in-between depositions would "not be practical." *See* E-mail correspondence from

SPARC/Trust's Counsel, *attached to* HTC's Motion *as* ***Exhibit A.*** HTC made every effort to accommodate the request of SPARC/Trust's counsel regarding the deposition dates. Based upon the agreement of the parties, HTC's expert Anna Kovalkova who prepared its discounted cash flow analysis was deposed in Nashville, Tennessee on July 8, 2010, Pat McCoy (its fact/expert witness who was responsible for obtaining financing for the project and for performing due diligence on the hotel operations numbers for the cash flow analysis) was deposed on August 8, 2010 in Oklahoma City, Oklahoma, Doc Crants (HTC's principal and fact/expert witness responsible for government contracts, training operations and performing due diligence on hotel and training center operations for the cash flow analysis) was deposed on August 20 and 21, 2010, Bruce Holmes (HTC's hotel expert/fact witness who performed due diligence with respect to the operating expenses for the hotel operation) was deposed on August 23, 2010 in Oklahoma City, Doug Morris (president of Stillwater National Bank from which HTC sought financing) was deposed in Oklahoma City on August 24, 2010, and Jay Goldman (HTC's real estate appraisal expert) was deposed on September 9, 2010.

3. In furtherance of their deposition and trial preparation methodology, SPARC/Trust requested that they be permitted to disclose their expert witness on September 15, 2010 so that SPARC/Trust's experts could review HTC's expert deposition transcripts prior to issuing their own Reports. HTC's counsel agreed, based upon the understanding that SPASRC/Trust would have only "three or four" experts and that SPASRC/Trust would provide deposition dates for these experts so that discovery could be completed in a timely manner.

4. The parties agreed to SPARC/Trust disclosing the identity of its expert witnesses on September 1, 2010, with any formal Reports being provided on or before September 15, 2010. On August 23, 2010, this Court entered an Order permitting SPARC/Trust to name its experts on

September 1, and provide its expert reports on September 15, 2010. *See* Order dated August 23, 2010. The purpose of this arrangement was to allow HTC to schedule the depositions of SPARC's experts in the latter part of September and be prepared with any potential rebuttal testimony by the Court's deadline for seeking leave to disclose the need for such testimony 30 days before the pretrial. On September 1, 2010, just one (1) month prior to the close of discovery in this matter, SPARC/Trust listed no less than twelve (12) expert witnesses and four (4) previously un-disclosed fact witnesses. *See* SPARC/Trust Expert Witness Disclosures, *attached to* HTC's Motion *as **Exhibit B**.*

5.    Since September 1, 2010, counsel for HTC has been diligently attempting to secure potential deposition dates from SPARC/Trust for these twelve (12) experts. *See* Copies of Correspondence to counsel for SPARC/Trust, *attached to* HTC's Motion *as **Exhibit C**.* After the September 1, 2010 disclosures and after numinous requests, SPARC/Trust did not provide any deposition dates for its experts until September 16, 2010- just two (2) weeks before the close of discovery. That date was for one (1) expert to be deposed in mid October, during the week after the Motion *in Limine* deadline in this case. *See* E-mail Correspondence from SPARC/Trust's counsel, *attached to* HTC's Motion *as **Exhibit D**.*

6.    Prior to the parties' agreement to jointly seek a brief continuance of the trial of this case given the amount of work yet to be accomplished, SPARC/Trust had provided potential deposition dates for only nine (9) of the twelve (12) experts listed by SPARC/Trust. Further, a good portion of the dates provided by SPARC/Trust are after the close of discovery in this matter and after the October 6, 2010 deadline for Motions *in Limine*. *See* Chart Summarizing Potential Deposition Dates and Supporting E-Mails from Counsel for SPARC/Trust, *attached to* HTC's Motion *as **Exhibit E**.*

7.  After learning of the Court's decision to set a status conference on October 26, 2010 with respect to the joint request for a continuance, the parties have attempted to schedule deposition dates of all of SPARC/Trust's experts. On September 30, 2010, HTC took the deposition of SPARC/Trust's real estate appraisal expert, John Pekar, and on October 1, 2010 took the deposition of one of its hotel operations experts, Terry Marcus. The parties are attempting to schedule additional depositions of SPARC/Trust's experts during the weeks of October 11, 2010 and October 18, 2010, however HTC does not yet have finalized dates for the majority of the experts and does not believe that all depositions will be complete by the time of the October 26, 2010 status conference.

8.  As evidenced by SPARC/Trust's expert disclosures, the disclosures cover a broad range of subject areas including business valuation, real estate, accounting, hotel operations, government contracting and damages government contact cases. While the majority of the opinions seek to rebut opinions offered by Ms. Kovalkova, Mr. Crants, Mr. McCoy, Mr. Holmes and Mr. Goldman, some opinions (i.e. recoverability of damages in government contracting and business valuation issues) range into areas not directly covered by HTC's expert disclosures. Without question, SPARC/Trust has had the opportunity to develop expert testimony specifically in response to and in an attempt to directly rebut HTC's experts. In addition, SPARC/Trust has continued to disclose expert testimony in rebuttal to HTC's experts, submitting a supplemental report from its expert John Pekar on Wednesday, September 30 at 3:24 p.m., the day before Mr. Pekar was to be deposed by HTC in which Mr. Pekar provided rebuttal opinions to the opinions expressed by HTC's expert Jay Goldman to his Report disclosed on July 1, 2010 and who was deposed on September 9, 2010. *See* Report of John Pekar, *attached to* HTC's Motion *as Exhibit F*.

9. HTC requests only that it be given the same opportunity that SPARC has had. SPARC has had the opportunity to review HTC's expert reports and testimony, and to disclose testimony in rebuttal thereto. While most expert depositions are conducted after the opposing party has disclosed their experts, SPARC/Trust insisted on being able to depose HTC's experts before issuing their opinions. HTC worked with SPARC/Trust to fully accommodate this request, which has left HTC with no time to respond to SPARC/Trust's witnesses.

10. Pursuant to the terms of this Court's Scheduling Order and Rule 16.01(f) of the Local Rules of Civil Procedure, the party seeking to disclose rebuttal testimony must show good cause to do so. *See* Scheduling Order at p. 7. "Good cause" for modification of a Scheduling Order under FRCP16 has been defined by one Federal Court in West Virginia as follows: "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D. W. Va. 1995) (internal citations omitted).

11. In this case, despite its best efforts, HTC has had no opportunity to respond to SPARC/Trust's experts. Given SPARC/Trust's chosen method of sequencing discovery, HTC could not develop rebuttal opinions prior to its expert depositions and disclose and offer them at that time as they had no idea what opinions the experts would hold. Although HTC has been working to analyze SPARC/Trust's expert opinions, given the scheduling issues involved, and its inability to depose 10 of the 12 disclosed experts, including its 4 primary retained experts, it has not been able to fully develop the rebuttal testimony that is needed at this time. However, there is no question that HTC should be given the same opportunity that SPARC was given – the opportunity to offer opinion testimony in response to SPARC/Trust's expert disclosures to rebut

the testimony given therein, and to disclose testimony critical of or in rebuttal to SPARC/Trust's experts. Without the opportunity to do so, SPARC/Trust will be able to tell the jury at trial "HTC's experts are wrong, and here is why we think that......." while HTC will have neither the ability nor the opportunity to do the same. That, of course, would be fundamentally unfair.

**WHEREFORE**, for the foregoing reasons, HTC respectfully requests that it be granted leave to disclose and designate expert testimony in rebuttal to that disclosed by SPARC/Trust. At this time, HTC is attempting to have such testimony completed to be disclosed by October 22, 2010, however its ability to do so will depend on the availability of SPARC/Trust's remaining experts for deposition. At this time, HTC is working with its previously-disclosed experts to prepare rebuttal testimony within their areas of expertise, however HTC may require one additional rebuttal expert to address the areas identified by SPARC/Trust. HTC therefore requests that it be given a reasonable period of time, up to and including October 22, 2010 to disclose rebuttal expert testimony. If SPARC/Trust's experts cannot be made available for deposition in advance of that deadline, a short additional extension may also be necessary.

          HOMELAND TRAINING CENTER, LLC,

          By       /s/ J.H. Mahaney     .
                 Of Counsel

J.H. Mahaney, Esquire
(West Virginia Bar Number 6993)
J. Jarrod Jordan, Esquire
(West Virginia Bar Number 10622)
**HUDDLESTON BOLEN, LLP**
Post Office Box 2185
611 Third Avenue
Huntington, West Virginia 25701
(304) 529-6181
jmahaney@huddlestonbolen.com
**Counsel for Plaintiff,**
**HOMELAND TRAINING CENTER, LLC**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## AT MARTINSBURG

HOMELAND TRAINING CENTER, LLC,
A Tennessee Limited Liability Company,

      Plaintiff,

v.                                CIVIL ACTION NO:   3:07-cv-160

SUMMIT POINT AUTOMOTIVE RESEARCH
CENTER, a West Virginia Limited Liability
Company, individually and in its capacity as
Trustee of the William Scott Inter Vivos Trust,
and the WILLIAM SCOTT INTER VIVOS
TRUST,

      Defendants/Third-party Plaintiffs,

v.

HOMELAND SECURITY CORPORATION,

      Third-party Defendant.

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Plaintiff Homeland Training Center, LLC's Memorandum of Law In Support of Its Motion To Permit It To Disclose And Designate Rebuttal Expert Testimony"*, by electronic filing using the CM/ECF System, and by mailing a complete copy to all counsel of record, postage prepaid, in the regular course of the United States Mail, on the 4th day of October 2010 to:

    Peter L. Chakmakian           Wm. Richard McCune, Jr.
    108 North George St.            115 West King St.
    Charles Town, WV 25414       Martinsburg, WV 25401

                                            /s/ J.H. Mahaney