**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT MARTINSBURG**

**HOMELAND TRAINING CENTER, LLC,**
**A Tennessee Limited Liability Company,**

**Plaintiff,**

**CIVIL ACTION NO: 3:07-cv-160**

**SUMMIT POINT AUTOMOTIVE RESEARCH CENTER, a West Virginia Limited Liability Company, individually and in its capacity as Trustee of the William Scott Inter Vivos Trust, and the WILLIAM SCOTT INTER VIVOS TRUST,**

**Defendants/Third-Party Plaintiffs,**

**v.**

**HOMELAND SECURITY CORPORATION,**

**Third-Party Defendant.**

**PLAINTIFF HOMELAND TRAINING CENTER, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE DEFENDANTS' WITNESSES DISCLOSED ON SEPTEMBER 1, 2010 (MOTION NO. 1)**

Plaintiff, Homeland Training Center, LLC ("HTC"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, moves this Court to exclude those witnesses disclosed by Defendants Summit Point Automotive Research Center and the William Scott *Inter Vivos* Trust ("SPARC/Trust") on September 1, 2010 that HTC cannot depose before the November 3, 2010 Pre-trial Conference in this matter. Further, to the extent that this Court does not permit HTC to disclose and designate rebuttal expert testimony, HTC moves to exclude from the trial of this matter any opinions or testimony of SPARC/Trust's expert, Mr. Pekar, that is based upon or

contained within his formal Report. HTC submits this Memorandum of Law in support of the Motion filed herewith.

## I. SUMMARY OF RELEVANT FACTS

Under the terms of this Court's Original Scheduling Order entered on February 22, 2010, SPARC/Trust had until July 1, 2010 to provide its expert disclosures and reports. *See* Scheduling Order. Counsel for SPARC/Trust requested to depose several HTC fact and expert witnesses in a very specific order and with a large amount of time in-between depositions so that his experts could review relevant material and to enable him to properly prepare for the depositions.

In furtherance of their deposition and trial preparation methodology, SPARC/Trust requested that they be permitted to disclose their expert witness on September 15, 2010 so that SPARC/Trust's experts could review HTC's expert deposition transcripts prior to issuing their own Reports. HTC's counsel agreed, based upon the understanding that SPASRC/Trust would have only "three or four" experts and that SPASRC/Trust would provide deposition dates for these experts so that discovery could be completed in a timely manner.

The parties agreed to SPARC/Trust disclosing the identity of its expert witnesses on September 1, 2010, with any formal reports to be provided on or before September 15, 2010. On August 23, 2010, this Court entered an Order permitting SPARC/Trust to name its experts on September 1, and to provide its expert reports on September 15, 2010. *See* Order dated August 23, 2010. On September 1, 2010, just one (1) month prior to the close of discovery in this matter, SPARC/Trust listed no less than twelve (12) expert witnesses and four (4) previously un-disclosed fact witnesses. On September 15, 2010, SPARC/Trust provided formal reports for four

(4) of these experts and summaries of the expected testimony of the remaining eight (8) experts. *See* SPARC/Trust Expert Witness Disclosures, *attached to* HTC's Motion *as* ***Exhibit A.*** Further, these disclosures listed a Mr. John F. (Rick) Pekar as a real estate expert that was not "specifically retained or employed to provide expert testimony in the case…" and not one that would therefore not be required to provide a formal Report. Id. at p. 2-3.

Since September 1, 2010, counsel for HTC has been diligently attempting to secure potential deposition dates from SPARC/Trust for these twelve (12) experts and four (4) fact witnesses. *See* Copies of Correspondence to counsel for SPARC/Trust, *attached to* HTC's Motion *as* ***Exhibit B.*** After the September 1, 2010 disclosures and after numinous requests, SPARC/Trust did not provide any deposition dates for its experts until September 16, 2010- just two (2) weeks before the close of discovery. That date was for one (1) expert to be deposed in mid October, during the week after the Motion *in Limine* deadline in this case. *See* E-mail Correspondence from SPARC/Trust's counsel, *attached to* HTC's Motion *as* ***Exhibit C.***

Since that time, the parties have attempted to schedule deposition dates of all of SPARC/Trust's experts as well as fact witnesses. On September 30, 2010, HTC took the deposition of SPARC/Trust's real estate appraisal expert, John Pekar. On October 1, 2010 HTC took the deposition of one of its hotel operations experts, Terry Marcus. *See* Notices of Deposition for John Pekar and Terry Marcus. Importantly, on September 29, 2010 at 3:24 pm (the day before the deposition of Mr. Pekar and as HTC's counsel was driving to the deposition of Mr. Pekar) SPARC/Trust provided- for the first time ever- a formal Report authored by Mr. Pekar. *See* E-mail and Report, *attached to* HTC's Motion *as* ***Exhibit D.*** This Report rebutted significant portions of the report of Jay Goldman, HTC's real estate expert. *See* id.

Currently, the parties are attempting to schedule additional depositions of SPARC/Trust's experts during the weeks of October 11, 2010 and October 18, 2010. However, HTC has not yet been able to finalize dates for the majority of the experts and fact witnesses and does not believe that all depositions will be complete by the time of the October 26, 2010 status conference or the date of the Pre-Trial Conference in this matter. HTC has made a "good faith" effort to confer with opposing counsel regarding the deposition dates of these witnesses. Evidence of such good faith is presented in the numerous e-mails and letters sent to opposing counsel on various dates, which are attached hereto as Exhibits.

Accordingly, HTC moves this Court to exclude from the trial of this matter any testimony or evidence from any expert or fact witness disclosed by SPARC/Trust on September 1, 2010 that HTC is not able to depose before the November 3, 2010 Pre-trial Conference in this matter. Further, to the extent that this Court does not permit HTC to disclose and designate rebuttal expert testimony, HTC moves to exclude any opinions or testimony of Mr. Pekar that are based upon or contained within his formal Report filed in this matter.

## II. LAW AND ARGUMENT

### A. This Court must exclude from testifying at trial any and all fact and/or expert witnesses that HTC is unable to depose before the pre-trial conference in this matter.

In the instant case, SPARC/Trust's actions in disclosing twelve (12) experts and four (4) new fact witnesses just one month prior to trial and not providing any dates for their depositions until two (2) weeks later will undoubtedly prejudice HTC. Numerous federal courts have excluded the testimony of experts where the opposing party has not been given the opportunity to depose these experts under Rule 26(b)(4)(A). *See e.g.,* Watts v. Martin, 2008 U.S. Dist.

LEXIS 96864 * 8 (E.D. Mich. Nov. 10, 2008) ("As Martin did not have the opportunity to depose Dr. Bayer because of the lapse of his medical license and the decision by Watts to obtain a different psychiatric expert, the Court believes that Martin's request for relief pursuant to Fed. R. Civ. P. 26(b)(4)(A) has merit."); *see also* Finwall v City of Chicago, 239 F.R.D. 494 (ND Ill 2006) (Testimony of arrestee's experts was barred because their reports were provided on afternoon of last day of discovery, ***which left no time for depositions or discovery under Fed. R. Civ. P. 26(b)(4) regarding reports, or engaging rebuttal experts***) (emphasis added).

Further, in waiting to disclose these additional four (4) fact witnesses until just one (1) month before the close of discovery, SPARC/Trust has violated Rule 26(e) of the Federal Rules of Civil Procedure by failing to "supplement... [their prior fact witness] disclosure... in a timely manner", with the "additional information [having] not otherwise been made known to the other parties during the discovery process..." As such, it is within the inherent authority of the Court to sanction SPARC/Trust accordingly. As explained in Buffington v. Baltimore County,

> "[b]ecause Rule 37 sanctions are not available to sanction violations of Rule 26(e), courts and commentators have recognized that reliance on the inherent power of the court to sanction violations of this discovery rule is fitting. See Outley v. City of New York, 837 F.2d 587, 589 (2d Cir. 1988); Bradley v. United States, 866 F.2d 120, 124 n. 6 (5th Cir. 1989) (power to sanction for violation of Rule 26(e) either implicit in rule or derived from court's inherent power); Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980) ('Few would question a court's inherent power to discipline breaches of Rule 26(e), even in the absence of a court order'); 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2050, at 325-26 (1970) ('In the absence of a rule speaking to the question [of sanctions for Rule 26(e) violations], reliance must be on the inherent power of the court.')."

Buffington v. Baltimore County, 913 F.2d 113, 133 (4th Cir. Md. 1990).

In the instant case, SPARC/Trust disclosed twelve (12) expert witnesses and four (4) new fact witnesses on September 1, 2010- just one month before the close of discovery. Since that date HTC has been working diligently to obtain dates to depose these witnesses. *See **Exhibits B***

*& C.* However, HTC has thus far only been able to depose two (2) of these experts and none of the fact witnesses yet. As has been expressed by one Federal Court of Appeal, "[f]ederal practice does not favor trial by ambush." Monge v. Cortes, 233 Fed. Appx. 8, 11 (1st Cir. 2007). If SPARC/Trust were permitted to offer witnesses at trial that HTC has not had the opportunity to depose, HTC would be severely prejudiced by not having the opportunity to discover the full substance of their testimony through deposition prior to trial. Such a result would be patently unfair. HTC has agreed to move forward and depose as many of these witnesses as is possible between now and November 3, 2010, the date of the pre-trial conference in this matter. To the extent that HTC is not able to depose any witness in the limited time left between today's date and the pre-trial conference in this matter, fundamental fairness mandates that those witnesses be prevented from testifying at the trial of this matter.

**B. Further, to the extent that HTC is not permitted to designate rebuttal experts, this Court must exclude any testimony or evidence contained or based upon the report of John F. (Rick) Pekar.**

HTC has previously filed a Motion to Permit it to Disclose and Designate Rebuttal Expert Testimony. To the extent that this Court does not permit HTC to disclose and designate rebuttal experts, this Court must exclude from the trial of this matter any testimony or opinions of Mr. Pekar which are based upon or contained within his Report.

As stated above, the parties agreed upon September 15, 2010 as the date for SPARC/Trust to provide the Reports of its retained experts and this Court entered an Order permitting this Agreement. *See* Order dated August 23, 2010. On that date SPARC/Trust provided its Expert Witness Disclosures. *See* ***Exhibit A.*** These disclosures listed Mr. Pekar as a real estate expert that was not "specifically retained or employed to provide expert testimony in

the case…" and therefore not an expert that would be required to provide a formal report. Id. at p. 2-3.

On September 30, 2010, HTC deposed Mr. Pekar. On September 29, 2010 at 3:24 pm (the day before the deposition of Mr. Pekar and as HTC's counsel was driving to the deposition of Mr. Pekar) SPARC/Trust provided- for the first time ever- a formal report authored by Mr. Pekar. *See* E-mail and Report, *attached to* HTC's Motion *as* ***Exhibit D.*** This Report rebutted significant portions of the report of Jay Goldman, HTC's retained real estate expert. *See* id.

This Report was provided for the first time two (2) weeks after SPARC/Trust's Expert Report deadline of September 15, 2010. Importantly, this was not a prior Report prepared before litigation and merely supplemented within the discovery deadline, but a specific rebuttal Report created by Mr. Pekar for the purposes of litigation. Such improper, last minute actions cannot stand.

Rules 26(a)(2)(A) and (B) provide that any expert retained for trial purposes must provide a formal Report by the Expert disclosure deadline. *See* Fed R. Civ. P. Rule 26(a)(2)(A) & (B) (2010). Under Rule 37 of the Federal Rules, this Court has the clear authority to exclude any testimony or opinions based upon Mr. Pekar's Report. *See* Fed R. Civ. P. 37(c) (2010) ("If a party fails to provide information or identity a witness as required by rules 26(a) or (e), the party is not allowed to use that informant or witness to supply evidence…at trial…").

This Court has the clear authority pursuant to Rules 26 and 27 of the Federal Rules of Civil Procedure to exclude any opinions and/or testimony from Mr. Pekar based upon or contained within his Report. HTC has requested leave to designate and disclose rebuttal expert testimony. If this Court does not permit HTC to utilize such experts, it would be fundamentally unfair to permit SPARC/Trust the ability to offer late rebuttal opinions at trial. Accordingly, to

the extent that this Court does not permit HTC to disclose and designate rebuttal expert testimony, any opinions or testimony of Mr. Pekar that is based upon or contained within his formal report, must be excluded from the trial of this matter.

## III. CONCLUSION

For the reasons set forth herein and in HTC's Motion filed contemporaneously herewith, HTC moves this court to exclude from the trial of this matter those expert or fact witnesses disclosed by SPARC/Trust on September 1, 2010 that HTC cannot depose prior to the November 3, 2010 Pre-trial Conference in this matter. Further, to the extent that this Court does not permit HTC to disclose and designate rebuttal experts, HTC moves this Court to exclude from the trial of this matter any testimony or evidence based upon the formal report of John (Rick) Pekar.

**HOMELAND TRAINING CENTER, LLC,**

By /s/ J.H. Mahaney .
Of Counsel

J.H. Mahaney, Esquire
(West Virginia Bar Number 6993)
J. Jarrod Jordan, Esquire
(West Virginia Bar Number 10622)
**HUDDLESTON BOLEN, LLP**
Post Office Box 2185
611 Third Avenue
Huntington, West Virginia 25701
(304) 529-6181
jmahaney@huddlestonbolen.com
**Counsel for Plaintiff,**
**HOMELAND TRAINING CENTER, LLC**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT MARTINSBURG**

**HOMELAND TRAINING CENTER, LLC,**
**A Tennessee Limited Liability Company,**

**Plaintiff,**

**v.** **CIVIL ACTION NO: 3:07-cv-160**

**SUMMIT POINT AUTOMOTIVE RESEARCH CENTER, a West Virginia Limited Liability Company, individually and in its capacity as Trustee of the William Scott Inter Vivos Trust, and the WILLIAM SCOTT INTER VIVOS TRUST,**

**Defendants/Third-party Plaintiffs,**

**v.**

**HOMELAND SECURITY CORPORATION,**

**Third-party Defendant.**

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he served the foregoing ***"Plaintiff Homeland Training Center, LLC's Memorandum of Law in Support of Motion to Exclude Defendants' Witnesses Disclosed on September 1, 2010 (Motion No. 1)"*** by electronic filing using the CM/ECF System, and by mailing a complete copy to all counsel of record, postage prepaid, in the regular course of the United States Mail, on the 6th day of October 2010 to:

Peter L. Chakmakian
108 North George St.
Charles Town, WV 25414

Wm. Richard McCune, Jr.
115 West King St.
Martinsburg, WV 25401

/s/ J.H. Mahaney