IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

**HOMELAND TRAINING CENTER, LLC,**
A Tennessee Limited Liability Company,

        **Plaintiff,**

                                      **CIVIL ACTION NO: 3:07-cv-160**

**SUMMIT POINT AUTOMOTIVE RESEARCH
CENTER,** a West Virginia Limited Liability
Company, individually and in its capacity as
Trustee of the William Scott Inter Vivos Trust,
and the **WILLIAM SCOTT INTER VIVOS
TRUST,**

        **Defendants/Third-Party Plaintiffs,**

v.

**HOMELAND SECURITY CORPORATION,**

        **Third-Party Defendant.**

## JOINT PRETRIAL ORDER

      Pursuant to this Court's Scheduling Order, Plaintiff Homeland Training Center, LLC ("HTC") and Defendants/ Third Party Plaintiffs Summit Point Automotive Research Center and the William Scott *Inter Vivos* Trust's ("SPARC/Trust") file the following Joint Pretrial Order.

    1.    **Brief Statements Regarding Case**

        A.    **Plaintiff's Statement Regarding Elements and Damages**
            i.  *Essential Elements*: Damages caused by SPARC/Trust's anticipatory repudiation. The Fourth Circuit Court of Appeals has already found that SPARC/Trust anticipatorily repudiated the Ground Lease and remanded this case for a trial on the issue of damages. Homeland Training Ctr v. Summit Point Auto. Research Ctr., 594 F.3d 285 (4th Cir. 2010).

ii. *Essential Elements*: HTC's burden with respect to its damages. To establish that SPARC/Trust's repudiation caused its damage, HTC must prove by a preponderance of the evidence only that it was ready, willing, and able to perform the agreement to the extent that such performance was possible at the time of SPARC/Trust's repudiation. If HTC satisfies this burden, it need not prove that it would have satisfied the financing or any other unfulfilled condition or obligation under the Lease, as SPARC/Trust's breach immediately excused HTC from having to take any further steps to satisfy any unfulfilled conditions.  *See* Restatement (Second) of Contracts § 245, 255; Champion v. Whaley, 311 S.E.2d 404 (S.C. Ct. App. 1984); Matrix Realty Group, Inc. v. Food Mgmt. Group LLC, 2010 U.S. Dist. LEXIS 100749 (S.D.N.Y. Sept. 21, 2010).

iii. *Essential Elements*: Burden shift after anticipatory repudiation. If HTC proves by a preponderance that it was ready willing, and able to perform to the extent possible at the time of breach, then the burden shifts to SPARC/Trust to prove that its breach did not cause HTC to suffer any damages, which necessarily means that SPARC/Trust must prove that HTC would never have been able to obtain the necessary financing for the project even had it not breached the Lease. To do so, SPARC/Trust must prove by a preponderance of the evidence that even if it had not repudiated and breached the Lease agreement, HTC would never have been able to obtain the financing necessary for the project from any source. SPARC/Trust's proof cannot be based upon speculation or conjecture, but must be based upon factual evidence or the reasonable inference to be drawn therefrom. *See* Restatement (Second) of Contracts § 245, 255; Champion, 311 S.E.2d 404; Matrix Realty Group, 2010 U.S. Dist. LEXIS 100749.

iv. *Damages Sought*:

1. Lost Profits: $5,746.159- $17,153,194

   a. *Legal Support*: Cell, Inc. v. Ranson Investors, 427 S.E.2d 447 (W.Va. 1992) (recognizing that new businesses can recover lost profits in breach of contract claims). Additional citations and argument supporting lost profits are found in HTC's Response to SPARC/Trust's Motion for Summary Judgment [under seal]

2. Out of Pocket Expenses:  $722,603.22

   | | | |
   |---|---|---|
   | a. | Bank service charge: | $907.20 |
   | b. | Business insurance: | $6008.00 |
   | c. | Computer Software: | $777.25 |
   | d. | Consulting: | $59,569.85 |

      e. Depreciation:                            $11,342.36
      f. Dues and subscriptions:        $226.00
      g. Employee benefits:            $45,888.86
      h. Equipment rental:             $5,376.81
      i. Miscellaneous:                  $2,001.68
      j. Moving:                               $13,228.63
      k. Office supplies:                 $2,863.90
      l. Payroll:                              $439,281.11
      m. Postage and shipping:          $2,547.13
      n. Printing and reproduction:     $3,084.60
      o. Professional fees:              $55,480.12
      p. Rent:                                 $41,780.60
      q. Telephone:                       $17,319.61
      r. Travel:                              $14,919.51

      s. *Legal Support*: Restatement (Second) Contracts §344

   **3.** Attorneys Fees and Expenses as of 8/31/2010: $349,068.19
      a. Huddleston Bolen:           $333,903.55
      b. Gullett, Sandford, et al:      $15,164.64

      c. *Legal Support*: Ground Lease, at p. 16; <u>Homeland Training Ctr v. Summit Point Auto. Research Ctr.</u>, 594 F.3d 285 (4th Cir. 2010) (recognizing the Ground Lease "allowed for an award of attorneys' fees to a 'prevailing party' in litigation.").

**B.**    **Defendant's Statement Regarding Elements and Defenses**

   **1. Lack of proximate cause.** Under West Virginia law, a Plaintiff must prove that the Defendant proximately caused its future damages such as lost profits. <u>Keister v. Talbott</u>, 391 S.E.2d 895, 901 (W.Va.1990) ("Lost profits are special damages which can be awarded only when they are the proximate result of the defendant's wrongdoing"). HTC claims that, but for SPARC's repudiation, HTC would have obtained the financing necessary to construct the lease projects from which it allegedly would have made millions. SPARC argues that the record (including testimony from HTC's own witnesses) shows, however, that HTC's financing failed for reasons not having to do with its dispute with SPARC. See description of financing failure contained in SPARC's Motion for Summary Judgment, doc. no. 291, section II. D., pp. 19-21.

   **2. HTC's alleged damages are too speculative**. HTC bases its damages claim mostly on profits from government contracts that it claims it would have bid upon and obtained had it built its facilities at Summit Point. Under West Virginia law, however, such future damages cannot be speculative but must be proven to a reasonable certainty. Syl. pts. 1 & 2, <u>Cell, Inc. v. Ranson</u>

Investors, 427 S.E.2d 447 (W.Va. 1992). The award of future government contracts is simply too contingent and speculative and cannot be based on a reasonable certainty. *See e.g.* Olin Jones Sand Co. v. United States, 225 Ct.Cl. 741, 1980 WL 13211 (1980) ("Receipt or non-receipt of future contracts is both speculative in nature and dependent on many factors not related to [the injury to the plaintiff]") and cases cited in SPARC's Motion for Summary Judgment, doc. no. 291, section II. B., pp. 10-13.

3. **HTC's alleged expert testimony is unreliable and irrelevant**. As SPARC has argued in its two Daubert motions, HTC's two proposed experts (Anna Kovalkova and Doctor R. Crants) may not testify to HTC's alleged future damages. Both lack the necessary technical backgrounds, and more importantly, both base their testimony on inadmissible speculation. HTC has no history of profitability or other business on which to project future damages, and hypothetical government contracts are uncertain and speculative by their nature. Olin Jones Sand Co. v. United States, 225 Ct.Cl. 741, 1980 WL 13211 (1980). Kovalkova admitted that she relied on Crants's speculation without doing any due diligence of her own, and her work is plagued by technical errors (such as failure to use comparable companies). Moreover, she did not address the issue of causation which she was required to do. Crants (the majority owner of HTC) has repeatedly inflated his damages claim without merit and can have no personal knowledge of profits from contracts which never existed. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993) ("A purported expert's knowledge must be "more than subjective belief or unsupported speculation"); Tyger Const. Co. Inc. v. Pensacola Const. Co., 29 F.3d 137, 142 ("expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record"). Please see SPARC's Daubert motions [doc. nos. 275 & 286] for full argument on these and other points.

4. **False statements**. SPARC has argued that HTC's principal Mr. Crants has made materially false statements concerning financing and damages which prevent him from reliably testifying in this case and which may merit sanctions such as fees and costs.

5. **Prevailing party status and attorneys fees**. If SPARC obtains a defense verdict it intends to claim that it is the prevailing party and will move for an award of fees and costs under the lease. Moreover, in light of what SPARC believes are HTC's material misrepresentations to the Court, SPARC reserves the right to move for fees in any event.

6. **Late Disclosed Damages.** HTC's late disclosed damages in the amount of $722,000 are inadmissible because SPARC claim was not raised until after the discovery request cut off date, after expert disclosure deadlines and years after precisely that information was requested from (but withheld by) HTC in

discovery. Moreover, HTC's own witnesses have refuted the legitimacy of that claim on the record.

7. **Fees and costs**. If SPARC is adjudged the prevailing party, or if it successfully moves for an award of fees and costs, it will seek damages in the amount of fees and costs expended. Currently, its attorneys' fees total $454,681.25 and its costs (including expert costs) total $369,446.00.

2. **Contested Issues of Fact and Law**

   A. **Pending Motions**
      i. SPARC/Trust's Motion for Summary Judgment [under seal]

      ii. SPARC/Trust's Motion to Exclude Opinion Testimony of Doctor R. Crants [under seal]

      iii. SPARC/Trust's Motion to Exclude Testimony of Anna Kovalkova [Doc. 275]

      iv. Joint Motion to Continue Trial [Doc. 283]

      v. HTC's Motion to Permit Designation and Disclosure of Rebuttal Experts [Doc. 292]

      vi. SPARC/Trust's Motions in Limine [Doc. 303]
          1. Motion to Exclude Testimony of Anna Kovalkova
          2. Motion to Exclude Testimony of Doctor Crants
          3. Motion to Exclude Plaintiff's Damages Claim
          4. Motion to Exclude Punitive Damages
          5. Motion to Exclude Reference to Fourth Circuit Dicta
          6. Motion to Exclude New Damages Claim
          7. Motion to Exclude Valuation of the Lease Contrary to West Virginia Law
          8. Motion to Exclude CSP Associates, Inc.'s 2006 Assessment
          9. Motion to Exclude Damages Sought on Behalf of Non-Parties

      vii. HTC's Motion in Limine to Exclude Defendants' Witnesses Disclosed on September 1, 2010 [Doc. 305]

      viii. HTC's Motion to Permit Plaintiff to Supplement its Rule 26(a)(3) Exhibits Disclosure List [Doc. 307]

B.  **Plaintiff's List of Contested Issues of Facts and Law**

   **Questions of Law**

   i. Question of law regarding the admissibility of testimony by SPARC/Trust's recently deposed expert, Peter McDonald.

   ii. Question of law regarding the admissibility of the testimony of John Cupp, a fact witness disclosed by SPARC/Trust and employee of the U.S. State Department, as well as the admissibility of any SPARC/Trust expert witness offering opinions based upon his testimony as the U.S. State Department has refused to permit HTC to depose Mr. Cupp.

   iii. HTC reserves the right to move to exclude SPARC/Trust's recently disclosed experts on <u>Daubert</u> and other grounds after HTC has had the ability to depose said experts.

   **Questions of Fact**

   i. Whether HTC would have secured financing had SPARC/Trust not anticipatorily repudiated the Ground Lease.

   ii. The extent and nature of the damages caused by SPARC/Trust's anticipatory repudiation of the Ground Lease.

C.  **Defendant's List of Contested Issues of Fact and Law**

   **Issues of law**

   1. Whether lost profits from future, hypothetical government contracts and HTC's damages generally are permissible under <u>Cell v. Ranson</u>'s "reasonable certainty" standard.
   2. Whether HTC's proposed experts may testify pursuant to Fed. R. Evid. 702, <u>Daubert</u> and its progeny
   3. Whether HTC can raise a genuine issue of material fact as to causation.
   4. Whether HTC's late disclosed $722,000 alleged damages, initially outlined for the first time on September 20, 2010, and including over 700 pages of documents provided on October 19, 2010, are admissible or allowable at all.
   5. Prevailing party status and possible awards of attorneys' fees and costs.

### Questions of Fact

SPARC contends that facts concerning HTC's efforts at financing are so one-sided that no genuine issue of material fact is raise and that there is no genuine issue as to whether HTC stood ready, willing or able to perform under the lease with regard to any breach by SPARC.

3. **Stipulation of Facts**

   A. Plaintiff's Proposed Stipulation of Facts

   None proposed by Plaintiff

   B. Defendants' Proposed Stipulation of Facts

   None proposed by Defendants.

4. **Damages**

   A. Lost Profits: $5,746.159- $17,153,194

   B. Out of Pocket Expenses: $722,603.22

   | | | |
   |---|---|---|
   | a. | Bank service charge: | $907.20 |
   | b. | Business insurance: | $6008.00 |
   | c. | Computer Software: | $777.25 |
   | d. | Consulting: | $59,569.85 |
   | e. | Depreciation: | $11,342.36 |
   | f. | Dues and subscriptions: | $226.00 |
   | g. | Employee benefits: | $45,888.86 |
   | h. | Equipment rental: | $5,376.81 |
   | i. | Miscellaneous: | $2,001.68 |
   | j. | Moving: | $13,228.63 |
   | k. | Office supplies: | $2,863.90 |
   | l. | Payroll: | $439,281.11 |
   | m. | Postage and shipping: | $2,547.13 |
   | n. | Printing and reproduction: | $3,084.60 |
   | o. | Professional fees: | $55,480.12 |
   | p. | Rent: | $41,780.60 |
   | q. | Telephone: | $17,319.61 |
   | r. | Travel: | $14,919.51 |

    **C.**    Attorneys Fees and Expenses as of 8/31/2010:  $349,068.19
- a. Huddleston Bolen:           $333,903.55
- b. Gullett, Sandford, et al:   $15,164.64

    **D.**    SPARC reserves the right to move for an award of fees and costs in the amounts described above if it is adjudged to be the prevailing party or if otherwise merited on the basis of HTC's actions.

**5.**    <u>**Suggestions for Avoidance of Unnecessary Proof and Cumulative Evidence**</u>

None proposed by Plaintiff

The parties, working with the Court, will need to provide a procedure by which they can introduce at trial documents that have been marked "confidential."

**6.**    <u>**Trial Days Necessary**</u>

    **A.**    **Plaintiff's Request**
3 days for its case-in-chief

    **B.**    **Defendant's Request**
6 days total – this includes anticipated lengthy cross examination of some of HTC's witnesses. If those HTC witnesses (or if portions of their testimony) are precluded, fewer days will be necessary

**7.**    <u>**Settlement Demands**</u>

    **A.**    **Last Settlement Demand by Plaintiff: $2 million**

    **B.**    **Last Response by Defendant: $100,000.**

AGREED AND STIPULATED by the Parties this 20th day of October, 2010.

          Respectfully submitted, and agreed and approved by,

Plaintiff, by counsel:

<u>/s/ J. H. Mahaney, Esquire</u>.
J.H. Mahaney, Esq. (#6993)
J. Jarrod Jordan, Esq. (#10622)
Huddleston Bolen, LLP
P.O. Box 2185
611 Third Ave.
Huntington, WV 25701
(304) 529-6181


Defendant, by counsel:
<u>/s/ Wm. Richard McCune, Jr., Esquire</u>

| | |
|---|---|
| Wm. Richard McCune, Jr. (WV Bar #2429) | Peter L. Chakmakian (WV Bar #687) |
| Alex A. Tsiatsos (WV Bar #10543) | Peter L. Chakmakian, L.C. |
| Wm. Richard McCune, Jr. PLLC | 108 North George Street |
| 115 West King Street | P.O. Box 547 |
| Martinsburg, WV 25401 | Charles Town, WV 25414 |
| 304-262-2500 | 304-725-9797 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

HOMELAND TRAINING CENTER, LLC,
A Tennessee Limited Liability Company,

        Plaintiff,

                        CIVIL ACTION NO: 3:07-cv-160

SUMMIT POINT AUTOMOTIVE RESEARCH
CENTER, a West Virginia Limited Liability
Company, individually and in its capacity as
Trustee of the William Scott Inter Vivos Trust,
and the WILLIAM SCOTT INTER VIVOS
TRUST,

        Defendants/Third-Party Plaintiffs,

v.

HOMELAND SECURITY CORPORATION,

        Third-Party Defendant.

**CERTIFICATE OF SERVICE**

      I, the undersigned attorney, counsel for Defendants Summit Point Automotive Research Center, and the William Scot Inter Vivos Trust in the foregoing action, after receiving Plaintiff's portion of the joint pre-trial order, hereby certify that on this 20th day of October, 2010, I served a true and accurate copy of the foregoing **Joint Pre-Trial Order** by filing the same with the Clerk using the CM/ECF system which will send notification to the following:

                        J.H. Mahaney, Esq.
                        Huddleston Bolen, LLP
                        P.O. Box 2185
                        611 Third Ave.
                        Huntington, WV 25701

**s/ Wm. Richard McCune, Jr.**
Wm. Richard McCune, Jr. (WV Bar #2429)
Alex A. Tsiatsos (WV Bar #10543)